UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO:

MATTHEW DESMOND )
Plaintiff )
)
v. )
)
CITY OF SALEM )
Defendant )

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**I. INTRODUCTION**

1. This is an action under M.G.L. c.151B, 42 USC section 12101 et seq., and 42 USC section 2000e, for unlawful discrimination based upon disability or perceived disability, and for violation of right to privacy pursuant to MGL Chapter 214 section 1B. The action is brought by Matthew Desmond, a Lieutenant employed by the City of Salem, Massachusetts Police Department

**JURISDICTION AND VENUE**

2. Jurisdiction over this matter lies in this Court pursuant to 42 USC §2000e-5, 28 USC §1343, and 28 USC §1367 (Supplemental Jurisdiction).

3. Venue in this District Court is proper because the illegal employment practices complained of herein occurred in Salem, Essex County, Massachusetts. Upon information and belief, the employment records related to Plaintiff's employment with Defendant are also located within Salem, Essex County, Massachusetts.

4. On November 14, 2007, Mr. Desmond filed a timely Charge of Discrimination on the basis of disability and perceived disability with the Massachusetts Commission Against Discrimination and the U.S. Equal Employment Opportunity Commission.

5. Plaintiff has requested that his Charges of Discrimination pending at the Massachusetts Commission Against Discrimination and US Equal Employment Opportunity Commission be withdrawn to allow him to file suit in Court. Those requests have been granted. On May 6, 2008 a Right to Sue letter was issued by the U.S. Equal Employment Opportunity Commission in this matter. The Right to Sue letter was received by Mr. Desmond on or after May 8, 2008. A copy of the Right to Sue letter is appended to this Complaint. Mr. Desmond has exhausted his administrative remedies and has timely filed suit in this Court.

**THE PARTIES**

6. Matthew Desmond is a resident of Salem, Essex County, Massachusetts. He is a citizen of the United States. He is male.

7. Defendant City of Salem ("Salem") is a City located in Essex County, Massachusetts, which is subject to suit in its own name. It has a principal place of business in Salem, Essex County, Massachusetts. Salem was and is Plaintiff's employer within the meaning of M.G.L. c.151B §5, and a person within the meaning of M.G.L. c.151B §4. At all times relevant to this Complaint, it was Plaintiff's employer within the meaning of 42 USC §2000e and 42 USC section 12101 et seq., was engaged in an industry effecting commerce within the meaning of those statutes, and in all other respects met all of the requirements for coverage under those various statutes. It is responsible for the illegal actions of Plaintiff's individual supervisors and managers set forth in this Complaint, including the actions of the Chief of the Salem Police Department.

8. At all times relevant to this Complaint, Plaintiff performed his job in at least a satisfactory manner. To the extent relevant to this action, at all times relevant to this

Complaint, Plaintiff was a qualified handicapped person and/or a qualified individual with a disability, and has been able to perform all of the essential functions of his job.

**FACTUAL BACKGROUND**

9. Lieutenant Desmond started working for the Salem Police Department in approximately 1997. In 1998, he took the Sergeant's exam and was the top finisher. In 2004, Plaintiff was promoted again, to the rank of Lieutenant. For a variety of reasons, various officers and coworkers within the Department were resentful of Lieutenant Desmond and did not like him due to the fact that he had advanced quickly through the ranks to get his Sergeant promotion and his Lieutenant promotion. Some of the individuals who were resentful of Lieutenant Desmond for this were the individuals who were his Captains and his Chief in 2006 and 2007.

10. From 2000 through early 2006, Lieutenant Desmond performed his job. Although Plaintiff believes that there were various ways in which he was either treated unfairly or resentment against him was expressed for the reasons mentioned above, he was not subjected to discipline nor was his career hampered in any way.

11. On January 6, 2006 Lieutenant Desmond became aware of various highly inappropriate conduct by another officer in the Salem Police Department. It is his understanding that the Chief of the Department and certain Captains wanted to keep quiet about this inappropriate conduct, but Lieutenant Desmond wanted to report it. Plaintiff reported the inappropriate conduct to a Captain. It was after his differences with his superiors regarding this inappropriate conduct that Lieutenant Desmond started having problems within the Department. As a result, from January 2006 through June 2006, Lieutenant Desmond was subjected to a variety of types of retaliation, criticisms and unfair treatment all of which were improper and not justified.

12. In June of 2006, Plaintiff's fitness to be in a command position was questioned by one of his superiors, Captain Comeau. Although Captain Comeau questioned Plaintiff's ability to function in a command supervisory position, he did not in any way indicate that

Plaintiff was mentally unfit either for his Lieutenant position, a command position, or work as a police officer. Indeed, from June 2006 through August 2006, Lieutenant Desmond was allowed to remain at work and perform his Lieutenant duties.

13. On August 2, 2006, Chief of Police Robert St. Pierre informed Lieutenant Desmond that it was his (Chief St. Pierre's) intention to subject Plaintiff to a "departmental evaluation" of his ability to "perform your duties in a command position." Chief St. Pierre stated that as a result of this, Plaintiff would be required to participate in a fitness for duty evaluation and possibly other related testing. On this date Chief St. Pierre also informed Plaintiff that he was being "temporarily" reassigned to an administrative position. The position to which Lieutenant Desmond was reassigned (and which he currently holds) was a great loss of status to Plaintiff within the Department and in the eyes of his coworkers. It has also caused him a loss of overtime and detail pay, has damaged his chances for further promotions, and has caused damage to his professional reputation. Despite the claim by Defendant that Plaintiff was not able to perform the duties of a command position, rather than being questioned about his abilities, or sent for training on command duties, Plaintiff was sent for psychological testing. Specifically, on August 15, 2006, Chief St. Pierre informed Plaintiff that his fitness for duty evaluation would consist of several appointments with a psychologist. Plaintiff was informed that failure to appear for any of these appointments could result in his employment being terminated. Chief St. Pierre sent Lieutenant Desmond for examination to a Dr. Belsar Louie.

14. Thee reason Plaintiff was being sent for a fitness for duty exam with a psychologist had nothing at all to do with any belief that Plaintiff was mentally unfit to perform his job or perform in a command position. Rather, in Plaintiff's situation, as Chief St. Pierre had done previously with another employee, Chief St. Pierre sent Plaintiff for psychological fitness for duty examinations (with this particular psychologist) in order to punish Plaintiff, in order to harass Plaintiff, and in order to obtain medical reports about Plaintiff which he could use to justify the discipline of Plaintiff or the removal of Plaintiff from his position. It is also Plaintiff's understanding that Chief St. Pierre on several occasions

made improper contact with Dr. Louie in an attempt to influence his examination of Plaintiff and in an attempt to influence his conclusions regarding Plaintiff's mental state and Plaintiff's fitness for duty.

15. Starting August 2, 2006, Chief St. Pierre limited Lieutenant Desmond's duties, placed him in a much lower status position, changed his shift, and limited his hours of work.

16. By early November 2006, Lieutenant Desmond had met with Dr. Louie five (5) times and had undergone neurological testing as well. Despite all of those tests, by November 1, 2006, there had still been no report regarding Lieutenant Desmond's fitness for duty and Plaintiff was left in this temporary job situation indefinitely.

17. In early November 2006, Lieutenant Desmond was informed that for reasons unknown to him, Dr. Belsar Louie was excusing himself from completing Plaintiff's examination. The examination was then referred to a Dr. Seymour, another psychologist.

18. Plaintiff did not receive Dr. Seymour's report regarding his fitness for duty until sometime after December 30, 2006. As he had done with Dr. Louie, Chief St. Pierre picked Dr. Seymour to complete Plaintiff's fitness for duty examination because he felt he could influence Dr. Seymour to provide a negative report regarding Plaintiff, and he could then use that report to either discipline Plaintiff or terminate Plaintiff's employment. Plaintiff questions whether Chief St. Pierre improperly attempted to contact Dr. Seymour and influence his report and his conclusions regarding Plaintiff's fitness for duty.

19. In the report Dr. Seymour issued on December 30, 2006, he relied on extremely questionable sources and issued a highly unprofessional and questionable report which indicated his bias against Plaintiff in the whole examination process and his being influenced by the Police Department. Among other things, Dr. Seymour found that Plaintiff suffered from Attention Deficit/Hyperactivity Disorder and anxiety disorder.

20. Despite the deficiencies in his report and diagnoses and although Dr. Seymour stated that Lieutenant Desmond was "not fully fit for duty as a police lieutenant at this time," he also stated that Plaintiff was considered "conditionally fit for duty" if Plaintiff complied with certain conditions he set forth for Plaintiff. These conditions included certain medical evaluations and treatment, placement on a day shift as watch commander with at least two Sergeants who would work with Lieutenant Desmond, review of Plaintiff's performance and related matters. Plaintiff was provided a copy of Dr. Seymour's report in January of 2007. At some point during the summer of 2007 Dr. Seymour may finally have provided some of the information upon which his report was based, to Plaintiff's expert Dr. Polozotti.

21. In the course of his examinations, Plaintiff revealed to Dr. Seymour that he had taken (under prescription from his doctor) the medication Conserta. Plaintiff took Conserta because it helped him to concentrate. After discovering from Dr. Seymour's report that Plaintiff had taken Conserta, Chief St. Pierre questioned Plaintiff's primary care physician regarding Plaintiff having taken Conserta. Ultimately, even though Plaintiff was no longer taking Conserta in 2007, Chief St. Pierre disciplined Plaintiff for not previously having reported that he was taking this medication. No other officer in the Department would have been disciplined for such a matter. As a result of this issue regarding the medication Conserta arising, in late January of 2007, Chief St. Pierre used this issue as an excuse to subject Plaintiff to further evaluations.

22. On January 24, 2007, Plaintiff's primary care physician Dr. James Hickey wrote a letter indicating that Plaintiff was a patient under his care, and that Plaintiff was fully fit for duty as a police officer. Plaintiff proceeded to give this letter to the Police Department. Despite having provided this letter, Plaintiff was not allowed to return to his former duties as a Lieutenant in a command position but was still forced to remain performing administrative duties. Additionally, on January 9, 2007, Chief St. Pierre ordered Lieutenant Desmond to hand in his firearm, which he did. Plaintiff's duties were therefore even more limited, and his loss of status and reputation even greater, as he was not allowed to carry a firearm while on duty.

23. Despite the recommendations contained in Dr. Seymour's report, at no time during 2007 (up to and including the present date) has the Salem Police Department carried out Dr. Seymour's recommendations which would have allowed Lieutenant Desmond to continue working as a police Lieutenant. Despite the statements in Dr. Seymour's report (with which Plaintiff takes issue) and his recommendations, the City of Salem has not attempted to make any of the reasonable accommodations set forth in Dr. Seymour's report, nor has the City of Salem initiated or engaged in an interactive dialog with Plaintiff to see if Plaintiff really does have a disability, or whether Plaintiff needs any reasonable accommodations. Although Chief St. Pierre has stated that he cannot deviate in any way from the recommendations of Dr. Seymour (as Chief St. Pierre stated in a letter dated March 1, 2007 directed to one of the labor unions at the Salem Police Department), he also has refused to take any action to carry out Dr. Seymour's recommendations, thus leaving Plaintiff in a state of limbo where Plaintiff is deemed unfit to perform his duties as a police Lieutenant but there is no action being taken to enable Plaintiff to have the reasonable accommodations which would allow him to perform the essential functions of that position.

24. In the spring of 2007, Lieutenant Desmond made several requests to Chief St. Pierre for copies of the various tests and examinations he had been subjected to, both to determine the best way that the results of the examination could be accommodated as well as to have his own expert health care provider prepare a report regarding his fitness for duty and need or lack thereof for accommodations. Despite these requests, Chief St. Pierre consistently refused to provide Plaintiff with his own test results.

25. In late April of 2007, Lieutenant Desmond was informed that the Police Department and Chief St. Pierre were claiming that if Plaintiff had an alternative program, based upon Dr. Seymour's report and supported by an expert opinion, Plaintiff would be allowed to go back to work performing the duties of a police officer. In order to accomplish this, Lieutenant Desmond sought the opinion of Dr. Polozotti. In order to provide Dr. Polozotti with adequate information upon which to base his opinion, Plaintiff requested

copies of all records and information about Plaintiff from both Dr. Belsar Louie and Dr. Seymour. These individuals either delayed in providing Plaintiff with the information he had requested, or refused to provide him with the information he had requested. Plaintiff believes their actions were based upon instructions to them from the Salem Police Department and/or Chief St. Pierre.

26. In early June of 2007, Chief St. Pierre wrote to Plaintiff's union representative stating that Plaintiff was being given a deadline for either completing the recommendations of Dr. Seymour or obtaining a second opinion evaluation. It was not properly Plaintiff's responsibility to do either of these things, but rather it was the obligation of the Police Department and Chief St. Pierre to carry out the recommendations of Dr. Seymour or to engage in an interactive dialog with Plaintiff.

27. On or about July 10, 2007, Plaintiff gave Dr. Polozotti's report to Chief St. Pierre indicating various significant deficiencies in Dr. Seymour's report and stating the following:

> "Conclusion: My recommendation is that Officer Desmond be returned to full, unrestricted duty. There are no indications, from a psychological perspective, that would indicate that he could not perform the duties required of his position. The incidents in question fall under the realm of management of the department since no psychological problems have been identified that would account for the behaviors noted."

Despite Dr. Polozotti's letter that Lieutenant Desmond should be returned to duty and there was no reason not to do that, the City of Salem, the Salem Police Department and Chief St. Pierre refused to do that.

28. On or about July 18, 2007, the attorney for the City of Salem wrote to Plaintiff's union attorney stating that in light of Dr. Seymour's report (and despite the report of Dr. Polozotti) Chief St. Pierre had no alternative but to "initiate appropriate administrative

action." Later in July 2007, Plaintiff's union attorney informed Plaintiff that after having spoken with the attorney for the City of Salem, it was her understanding that the "administrative action" being referred to by the attorney was a demotion. Thus, the response of the Salem Police Department to Plaintiff's doctor's report stating that Plaintiff was fit for duty and able to perform the duties of Lieutenant, was to refuse to put Plaintiff back to work, to refuse to attempt to put into effect the reasonable accommodations suggested by Dr. Seymour, to refuse to initiate or engage in an interactive dialogue with Plaintiff, and to suggest that Plaintiff should be subjected to discipline.

29. As indicated above, the fact that the Salem Police Department was suggesting Plaintiff be demoted from the position of Lieutenant due to the matters raised in Dr. Seymour's report is self contradictory and inconsistent. By suggesting that Plaintiff was not fit to perform the duties of a Lieutenant but could perform the duties of a lower ranking officer (such as Sergeant or patrolman) the City was indicating that Plaintiff was not medically or psychologically unable to perform the duties of a Lieutenant, but rather that Plaintiff's administrative or command skills were not adequate to perform the duties of Lieutenant. This distinction is highly important in that it means that to whatever extent Plaintiff might not have been suited for the job of Lieutenant (which he disagrees with) any deficiencies were solely due to either a lack of training or command abilities and not any medical or psychological reason, which should have been known by, and obvious to, the Salem Police Department and Chief St. Pierre. In light of this, it was entirely inappropriate for the Salem Police Department and Chief St. Pierre to send Plaintiff for a psychological fitness for duty examination which essentially has lasted from August of 2006 to the present, rather than sending Plaintiff for command training or management training or other police command training. Plaintiff had requested Command Training, and under Departmental rules and regulations Plaintiff was supposed to have such training, but it has not been provided to Plaintiff.

30. In August of 2007, Plaintiff's union and Plaintiff agreed with the City of Salem (as Plaintiff felt that he had no choice) that the question of whether Plaintiff should be

returned to full duty would be determined by an examination by a third doctor. Despite the fact that this agreement was reached in early August 2007, as of the present date, no such examination has yet taken place.

31. As of the present date, Plaintiff have still not been allowed to return to duty as a Lieutenant in a command position. Plaintiff is still not allowed to carry my firearm. Plaintiff is still only allowed to work in an administrative position that is demeaning to him and in which he has lost much status in the eyes of my peers and coworkers. The actions of the Salem Police Department and Chief St. Pierre since August, 2006 have also caused Plaintiff to lose significant amounts of money in that Plaintiff has not been able to receive most overtime payments he would otherwise be eligible for, nor have Plaintiff received detail duty he would otherwise be paid for.

32. The actions of the City of Salem, the Salem Police Department and Chief St. Pierre taken against Plaintiff since August of 2006 and continuing to the present date, all as set forth above, constitute discrimination against Plaintiff due to a perceived disability, the failure to initiate or engage in an interactive dialog to determine if a disability or a reasonable accommodation exists, improperly requiring Plaintiff attend a fitness for duty examination during 2006, improperly requiring Plaintiff to attend fitness for duty examinations during 2007, attempting to conduct a biased and predetermined fitness for duty examination against Plaintiff, not concluding Plaintiff's fitness for duty examination for two years (up to and including the present date), improperly attempting to influence the outcome of Plaintiff's fitness for duty examinations, refusing to allow Plaintiff to return to his full duties (even after he had presented medical reports stating that he was able to do so), refusing to allow Plaintiff adequate access to some of the medical information upon which Dr. Seymour's evaluation was based, unfairly disciplining Plaintiff in relation to a medication he was taking, unfairly not allowing Plaintiff to carry his firearm, removing Plaintiff from a command position, removing Plaintiff from appropriate administrative or supervisory duties and in general exhibiting bias toward Plaintiff due to the perception of Defendant and the supervisors and managers for whom

it is responsible, that Plaintiff suffered from a disability, all in an attempt to punish Plaintiff and compel and coerce Plaintiff to resign from his job.

33. If the Salem Police Department and Chief St. Pierre truly believed that Lieutenant Desmond had difficulties in performing the duties of Lieutenant or performing in a command position, Lieutenant Desmond should have been sent to management training or police command training, and not had his fitness for duty questioned by being subjected to psychological evaluations for some two years. Plaintiff has been improperly subjected to medical and psychological exams in an attempt to humiliate him, punish him, marginalize him, coerce him into leaving the Department and to provide improperly generated information to the Police Department upon which to either discipline Plaintiff, demote him or terminate his employment. To the extent that the Salem Police Department or Chief St. Pierre truly believed, based upon the facts of this matter or upon the reports which were generated, that Plaintiff suffered from a disability, they have breached their various obligations to Plaintiff as a person with a real or perceived disability. To whatever extent the Salem Police Department or Chief St. Pierre had the right to send Plaintiff for a fitness for duty examination (or for that matter any type of medical examination) that right has been abused and has been used to punish Plaintiff, discriminate against him and cause him great emotional distress.

34. The various actions City of Salem, the Salem Police Department and Chief St. Pierre (and the managers and supervisors for which they are responsible) toward Plaintiff as alleged in this Complaint were intentional, knowing and willful in violation of M.G.L. c.151B and 42 U.S.C. §12101 et. seq. (the Americans with Disabilities Act). These actions also violate Plaintiff's privacy rights under MGL Chapter 214 section 1B. The City of Salem is responsible for all of the actions of the Salem Police Department, Chief St. Pierre and Plaintiff's supervisors and managers, set forth in this Complaint.

35. As a result of the illegal actions taken against Plaintiff by the City of Salem, the Salem Police Department and Chief St. Pierre (and the managers and supervisors for which they are responsible) as set forth in this Complaint, Plaintiff has suffered much

financial harm, as well as emotional pain and suffering, and will continue to suffer these injuries into the future. Plaintiff's reputation has been irreparably damaged.

**COUNT I:** **AGAINST SALEM FOR DISCRIMINATION ON THE BASIS OF DISABILITY OR PERCEIVED DISABILITY, IN VIOLATION OF M.G.L. c.151B**

36. Plaintiff realleges and incorporates by reference as if fully set forth herein, ¶1-35 above.

37. By its actions set forth above, Defendant Salem has engaged in discrimination against Mr. Desmond on the basis of disability or perceived disability, and has failed to initiate or engage in an interactive dialog with regard to a disability, in violation of M.G.L. c.151B.

WHEREFORE, Plaintiff demands that this Court enter Judgment in his favor and against Defendant Salem, in an amount to be determined by this Court, including monies to compensate him for lost pay, lost benefits, punitive damages, emotional pain and suffering, interest, costs, attorney's fees, that he be ordered returned to his position as a Lieutenant performing the duties of a Lieutenant, and such other and further relief that this Court deems just and proper.

**COUNT II:** **AGAINST SALEM FOR DISCRIMINATION ON THE BASIS OF DISABILITY OR PERCEIVED DISABILITY, IN VIOLATION OF 42 U.S. CODE SECTION 12101 ET SEQ. AND 42 U. S. CODE SECTION 2000e**

38. Plaintiff realleges and incorporates by reference as if fully set forth herein, ¶1-37 above.

39. By its actions set forth above, Defendant Salem has engaged in discrimination against Mr. Desmond on the basis of disability or perceived disability, and has failed to initiate or engage in an interactive dialog with regard to a disability, in violation of 42 U.S. Code section 12101 et seq. and 42 U.S. Code Section 2000e.

WHEREFORE, Plaintiff demands that this Court enter Judgment in his favor and against Defendant Salem, in an amount to be determined by this Court, including monies to compensate him for lost pay, lost benefits, punitive damages, emotional pain and suffering, interest, costs, attorney's fees, that he be ordered returned to his position as a Lieutenant performing the duties of a Lieutenant, and such other and further relief that this Court deems just and proper.

## COUNT III: AGAINST SALEM FOR INTERFERENCE WITH PRIVACY RIGHTS IN VIOLATION OF MGL CHAPTER 214 SECTION 1B

40. Plaintiff realleges and incorporates by reference as if fully set forth herein, ¶1-39 above.

41. By its actions set forth above, Defendant Salem has engaged in unreasonable, substantial and serious interference with Mr. Desmond's right to privacy, in violation of MGL Chapter 214 section 1B.

WHEREFORE, Plaintiff demands that this Court enter Judgment in his favor and against Defendant Salem, in an amount to be determined by this Court, including monies to compensate him for emotional pain and suffering, interest, costs, and such other and further relief that this Court deems just and proper.

## JURY TRIAL DEMAND

## PLAINTIFF DEMANDS A TRIAL BY JURY OF ALL ISSUES AND COUNTS SO TRIABLE

Respectfully submitted,
MATTHEW DESMOND
By his Attorney,

Mitchell J. Notis, BBO# 374360
LAW OFFICE OF MITCHELL J. NOTIS
370 Washington Street
Brookline, MA 02445
Tel.: 617-566-2700